**B.S.B. DIVERSIFIED COMPANY, INC., a Delaware Corporation, Plaintiff,**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY; Insurance Company of North America; Continental Insurance Company; Highlands Insurance Company; National Union Fire Insurance Company of Pittsburgh, PA; First State Insurance Company; INSCO Limited Insurance Company; New Hampshire Insurance Company; Westport Insurance Company; and Central National Insurance Company of Omaha, Defendants.**

**No. C95–342D.**

United States District Court, W.D. Washington.

Oct. 17, 1996.

Gregory M. O'Leary, Seattle, WA, for BSB Diversified Company Inc.

Mary R. DeYoung, Reed McClure, Seattle, WA, Bryan M. Barber, Carolyn Sneider, Zelle & Larson, Los Angeles, CA, for American Motorists Insurance Company.

Sigurd B. Borgersen, Robert F. Kehoe, Schwabe Williamson Ferguson & Burdell, Seattle, WA, for Continental Insurance Company.

Pamela A. Lang, Steven Soha, Aiken, St. Louis & Siljeg, Seattle, WA, for Highlands Insurance Company, Central National Ins. Co. of Omaha.

Mark McLean Myers, Williams, Kastner & Gibbs, Seattle, WA, for National Union Fire Insurance Company of Pittsburgh, PA, New Hampshire Insurance Company.

Carl Edward Forsberg, Forsberg & Umlauf, Seattle, WA, for First State Insurance Company, INSCO Ltd.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DIMMICK, Chief Judge.

The Court has before it defendant First Interstate Insurance Company's motion for summary judgment dismissal[1] and plaintiff

---

1. The following are defendants who have joined in this motion and their counsel's name: American Motors Insurance Company ("AMICO"), Reed McClure; Continental Insurance Company ("Continental"), Schwabe Williamson; New Hampshire Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA, Williams Kastner & Gibbs; INSCO, Ltd.

B.S.B. Diversified Company, Inc.'s ("BSB") cross motion for partial summary judgment. At issue is insurance coverage for a parcel of land subject to environmental cleanup under state and federal law. After hearing oral argument and fully considering the briefs and affidavits filed by counsel, the Court concludes that BSB is successor to the proceeds of insurance policies issued to Heath Techna Corporation or Criton Corporation for events occurring prior to 1983.[2]

This cause of action was brought under the Court's diversity jurisdiction and thus the Court applies Washington State law. The material facts are not in dispute, making this an appropriate issue for resolution under Fed.R.Civ.P. 56. The Court must determine whether BSB is the successor to the insurance coverage rights of Criton Corporation (previously Heath Techna Corporation) as to environmental liabilities at the Hytek, Inc.[3] ("Hytek") site in Kent, Washington, when BSB has assumed the liabilities of Criton Corporation on this site and has assumed responsibility for cleanup required by state and federal authorities.

The insurance coverage at issue was contracted for in the 1970's and '80's by Criton Corporation or Heath Techna Corporation. In 1980, Heath Techna changed its name to Criton Corporation. In May of 1981, a field report to the Environmental Protection Agency ("EPA") identified ground water contamination at the Hytek, Inc. site in Kent, Washington. *See* Ex. B to CP 66. The "Hytek site" refers to property on which the Criton Corporation operated its Hytek Finishes Division. The property is located at 8202 South 200th Street, Kent, Washington and is frequently referred to as Parcel G.

On November 23, 1983, Criton Corporation formed a general partnership with two other corporations: Royal Zenith Corporation and plaintiff BSB. The partnership was called "Criton Technologies". An agreement dated December 28, 1983, transferred identified assets and liabilities of Criton Corporation (including Hytek Finishes Division) to Criton Technologies—the partnership ("Criton").

On June 26, 1987, a so-called "redemption agreement" was signed between Criton and BSB by which BSB expressed its wish to have Criton redeem its entire interest in Criton; Criton expressed its willingness "to redeem BSB's interest in exchange for all of the assets of its Heath Techna Aerospace Company and its Hytek Finishes Company (the "Aerospace Group"), provided that BSB assume all the liabilities of the Aerospace Group . . . ."; and BSB accepted the assets of the Aerospace Group and assumed the group's liabilities. A recently discovered Bill of Sale between Criton and BSB, also dated June 26, 1987, has been provided by plaintiff.

BSB has sold some of its interests to other corporations—Phoenix Washington Corporation ("Phoenix") on January 25, 1988 and to Esterline Technologies Corporation ("Esterline") on September 27, 1989. BSB retains Parcel G which is the piece of real property on which cleanup is required. *See* attached diagram indicating various transfers.

The EPA and the Washington Department of Ecology jointly issued to Hytek Finishes Company, a Post Closure Permit on November 8, 1988, requiring corrective action to address the contaminated ground water at the Hytek site. The two companies which had purchased part of the Hytek site requested clarification that they were not liable. On August 17, 1990, an agent for BSB wrote to the public agencies to explain the background and request designation of BSB as the permittee. The government entities approved the designation of BSB as permittee on October 19, 1990.

## PLAINTIFF'S POSITION

Plaintiff BSB acknowledges that it is not the named insured on any of the policies at issue; nor has BSB paid any premium for

---

Insurance Company, Forsberg & Umlauf which also represents First State Insurance Company; Central National Insurance Company of Omaha, Highlands Insurance Company, and Century Indemnity Company, Aiken St. Louis. Plaintiff BSB is represented by Heller Ehrman.

2. It should be emphasized that this order does not reach questions as to coverage of specific policies or specific periods of time.

3. Hytek is not a corporation despite its name. *See* plaintiff's brief at 3–4.

the insurance coverage. Rather, BSB contends that it received, by assignment in the 1987 transfer, the rights of Criton to any proceeds of insurance covering damage to the Hytek site occurring prior to transfer. Alternatively, BSB seeks coverage under operation of law relying on a recent Ninth Circuit opinion in which the court held that coverage followed liability even though not clearly assigned under contract law. *Northern Insurance Co. of New York v. Allied Mutual Insurance Co.,* 955 F.2d 1353 (9th Cir.1992).

BSB insists that EPA's discovery of ground water contamination at the Hytek site in 1981 was the triggering event; thus, the liability accrued in 1981 and rights to proceeds were transferred along with the liability.

### DEFENDANTS' POSITION

In opposition, defendants argue that there was no effective assignment of rights to BSB of insurance coverage. While now conceding that the first transfer from Criton Corporation to Criton Technologies in 1983 effectively assigned coverage, they argue that the transfer in 1987 was not an effective assignment because there was no specific mention of insurance among the assets transferred. Moreover, they contend that the transfers in 1988 and 1989 from BSB were fully as effective as the 1987 transfer to BSB. Thus, BSB can no longer claim coverage.

Defendants further argue that the Ninth Circuit's recognition of coverage by operation of law applies only to the narrow circumstances of *Northern Insurance.* Thus, defendants argue that there must be a transfer of substantially all assets from one company to another, transfer must occur between corporations, and the case applies only to product-line-successor liability, not environmental damages.

One defendant, Continental Insurance Company ("Continental"), contends that contamination at the site was continuous since operations began, and rights under its policies did not accrue until 1988—the year BSB agreed to pay for cleanup and well after any assignment took place. Thus, there was no

liability until after the transfer, so the transfer was not effective.

### ANALYSIS

■ Washington law recognizes that comprehensive general liability ("CGL") insurance encompasses environmental damages. *Boeing Co. v. Aetna Cas. and Sur. Company,* 113 Wash.2d 869, 784 P.2d 507 (1990). In the *Boeing* case, the Washington Supreme Court held that response costs incurred under CERCLA were "damages" within the meaning of a CGL policy as property damage.

> The great weight of authority from other state appellate courts agrees that cleanup costs incurred under environmental statutes constitute property damage for purposes of CGL policies.

*Weyerhaeuser Company v. Aetna Cas. and Sur. Co.,* 123 Wash.2d 891, 901, 874 P.2d 142 (1994).

■ Even with an anti-assignment clause in an insurance policy, Washington law recognizes an assignment of coverage for an event or activities preceding assignment.

> The purpose of a no-assignment clause in an insurance contract is to protect the insurer from increased liability. After the events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity.

*Public Utility Dist. No. 1 of Klickitat County v. International Insurance Company,* 124 Wash.2d 789, 800, 881 P.2d 1020 (1994). This case was relied on in *Northern Insurance* as an establishment of Washington law.

■ Washington law does not generally recognize that liability follows the purchase of corporate assets. *Hall v. Armstrong Corp., Inc.,* 103 Wash.2d 258, 692 P.2d 787 (1984).

> The general rule in Washington is that a corporation purchasing the assets of another corporation does not, by reason of the purchase of assets, become liable for the debts and liabilities of the selling corporation, except where: (1) the purchaser expressly or impliedly agrees to assume liability; (2) the purchase is a de factor merger or consolidation; (3) the purchaser

is a mere continuation of the seller; or (4) the transfer of assets is for the fraudulent purpose of escaping liability.

*Hall* at 261–62, 692 P.2d 787 (citations omitted).

Washington, however, recognizes successor liability in the circumstances of a product-line successor where an entire company has been sold. *Martin v. Abbott Laboratories*, 102 Wash.2d 581, 689 P.2d 368 (1984). This case was also relied upon by the *Northern Insurance* court.

As noted above, plaintiff BSB seeks recognition of insurance coverage under two alternative theories. The first would require a finding that the assignment in 1987 transferred Criton Technologies' liabilities and assets (including insurance) to BSB. The second would require a finding that the liabilities and assets transferred by operation of law, following *Northern Insurance*. The Court concludes that BSB is successor under either theory.

### TRANSFER BY CONTRACT

 The sale in 1987 transferring assets from Criton Technologies to BSB included the following language:

> [A]ll of the assets which Transferor owns as of the date hereof, or in which Transferor has as of the date hereof, a right, title or interest and which are used or held for use by Transferor in its Heath Techna Aerospace Company Division ("Heath Techna") and Hytek Finishes Company Division ("Hytek") which together form the Heath Techna Aerospace Group....
>
> \* \* \* \* \* \*
>
> All other assets used or held for use by Transferor in the Group, whether tangible or intangible, not herein above expressly mentioned which, as of the date hereof, are owned by Transferor or in which Transferor has a right, title, or interest.

Bill of Sale, Deed, Assignment and Document of Transfer at 1. Additionally, the Redemp-

tion Agreement dated June 26, 1987 between Criton and BSB provides that BSB will assume all "liabilities and obligations of the Aerospace Group, whether known or unknown, as of the date hereof, and further agrees to hold Criton harmless and indemnify it for claims, expenses or losses arising out of said liabilities or obligations." Redemption Agreement at 5. Reading these two documents as a whole, it is clear that the intent of the parties was for Criton to exchange *all* assets of the Aerospace Group (including the Hytek site) for BSB's rights in the remaining assets and BSB's assumption of all liabilities of the Aerospace Group.

The 1988 and 1989 sales to Phoenix and Esterline contained no similar exchange of assets for liabilities. In fact, BSB admittedly remains liable for the cleanup of Parcel G.

This Court therefore concludes that the 1987 transfer from Criton to BSB effectively assigned Criton's rights to coverage for a chose in action (environmental damage) involving Parcel G.[4]

 Another issue has been raised, however, as to when the events creating liability arose. As noted above, BSB contends that the 1981 report to EPA identifying ground water contamination is the triggering event. Defendant Continental disagrees. Relying on the fact that BSB apparently fought liability and did not voluntarily agree to a cleanup plan until late 1988, defendant Continental argues that pre–1988 assignment was invalid. In doing so, Continental insists that *PUD No. 1* was an entirely different case because "the rights to the policy proceeds were not transferred until the case was litigated in federal court long after the events had occurred." *Id.*, 124 Wash.2d at 801–02, 881 P.2d 1020. Moreover, the Washington court's decision in *Weyerhaeuser* emphasized the coverage for property damage was premised on Weyerhaeuser's cooperation and voluntary compliance with cleanup. Defendant Continental also relies on a California case critical of the Ninth Circuit's interpretation

---

**4.** *See* L. Russ & T. Segalla, *Couch on Insurance* 3d, §§ 35:1, *et seq.* "While the general rule regards liability and indemnity policies as non-assignable personal contracts, assignment is val-

id following occurrence of the loss insured against and is then regarded as chose in action rather than transfer of actual policy." (citation omitted).

of California law in *Northern Insurance. Quemetco, Inc. v. Pacific Automobile Insurance Company*, 24 Cal.App.4th 494, 29 Cal. Rptr.2d 627 (1994).[5] *See also General Refractories Co. v. Travelers Ins. Co.*, 1995 WL 634451 (E.D.Pa.1995).

This Court is governed by Washington law in this case, and this Court finds nothing in *PUD No. 1* or *Weyerhaeuser* that would require that liability be admitted prior to transfer of insurance rights. The issue in *Weyerhaeuser* was whether there could be coverage for environmental cleanup costs "where the involved government environmental agency has not made an overt threat of formal legal action?" *Weyerhaeuser* at 896, 874 P.2d 142. The Washington Supreme Court concluded that there could. The court recognized that to hold otherwise would defeat the purpose:

> [F]orcing a policyholder to both promptly act to mitigate further environmental damage, *and* to await formal threat of legal action creates an unresolvable conflict and results in destroying the contractual right to liability coverage in many cases involving environmental pollution damages.

*Weyerhaeuser*, 123 Wash.2d at 913, 874 P.2d 142. The 1981 notification of ground water contamination constituted sufficient establishment of liability prior to transfer.

## TRANSFER BY OPERATION OF LAW

■ As an alternative, the Court rules that insurance coverage passes to BSB by operation of law following the Ninth Circuit's decision in *Northern Insurance*. In *Northern Insurance*, the court held that there was no explicit transfer of liabilities in an asset purchase agreement in which Brown–Foreman Corporation purchased California Cooler. The Ninth Circuit, however, relied on Washington and California law to conclude that liability for pre-sale activity "transferred irrespective of any clauses to the contrary in the asset purchase agreement." *Id.* at 1357.

Then, under "operation of law", the court concluded that the rights under insurance policies to indemnification and a defense followed the liability.

Defendants point to distinctions between this case and the *Northern Insurance* case, and the *Northern Insurance* court's reliance on *Abbott Labs* which was a product liability case, where substantially all of a company's assets were transferred. Here, however, Criton Corporation and Criton Technologies remain potentially liable for cleanup under federal and state law (42 U.S.C. § 9607, *et seq.* or RCW 70.105D). They argue that this increases their risk and defeats any application of *Northern Insurance*.

This Court recognizes that the instant case is not a successor product-liability case following *Abbott Labs*. In *Abbott Labs*, a successor company was assigned liability by the court for a product injury where the predecessor company was no longer in business. In the instant case, liability was assigned to a successor by contract. The principle that insurance follows liability, however, as outlined in *Northern Insurance* seems equally as valid in this instance as in a product-liability case.

The Court concludes that insurers' risks have not increased when their duty to indemnify and defend relates to events occurring prior to transfer. Coverage will depend on the terms of each policy, but the damage to the property is the same regardless.

Thus, this Court would extend the holding in *Northern Insurance* to a successor responsible for environmental cleanup where the events creating liability occurred prior to transfer of liability. *See* dissent in *Quemetco*, 29 Cal.Rptr.2d at 634–35:

> The principle that "insurance benefits follow liability" makes equal sense in CERCLA cases as it does in product liability cases. If the law holds the successor liable

---

**5.** The *Quemetco* court noted that liability was premised on acts of Quemetco's predecessor (acts occurring between 1956 and 1970), and the transfer of assets occurred prior to passage of CERCLA in 1980. Thus, the court held that "unlike the situation in *Northern*, no liability passed as a matter of law at the time of the asset sale as no such liability existed at that time." *Id.*

29 Cal.Rptr.2d at 631. Also, in considering whether the coverage had been assigned by sale, the California court concluded that this transfer was defeated by the no-assignment clauses in the policy and because cleanup damages were not assessed until 1987, there was no accrued right to proceeds. *Id.* 29 Cal.Rptr.2d at 632.

for its predecessor's tortious acts—no matter the nature of those acts—then the law likewise transfers the insurance benefits covering liability for those acts to the successor.

## SUMMARY

In summary then, the Court concludes the following as a matter of law:

(1) The 1983 assignment explicitly transferred Criton Corporation's insurance coverage to Criton Technology. (Defendants agree on this.)

(2) Any "no assignment" clauses in the policies do not prohibit transfers of coverage for events occurring before assignment.

(3) The 1981 report to EPA established liability; or alternatively, liability attached when the polluting events occurred—before 1981.

(4) The 1987 Bill of Sale and Redemption Agreement was an effective transfer of liability and insurance coverage from Criton Technologies to BSB for damage to the Hytek site.

(5) Transfers and sales after 1987 to Phoenix and Esterline do not relieve BSB of liability, and therefore reflect no intent to transfer insurance coverage.

As an alternative to the conclusion in No. 4 above, the Court also concludes that coverage followed liability per *Northern Insurance* (by operation of law).

THEREFORE, plaintiff BSB's motion for partial summary judgment is GRANTED and defendants' motion is DENIED.

The Clerk of the Court is directed to send copies of this order to all counsel of record.

# BSB's Corporate History

**BSB Today** (only asset Parcel G)

Following the 1988 and 1989 transfers, BSB retains no appreciable assets of the former Hytek Division other than Parcel G.

**Criton Corp.**

Numerous divisions including: Hytek Finishes Div., Heath Tecna Aerospace Div. and at least ten other divisions and subsidiary companies.

11/26/83: Criton Corp. contributes all assets (including Hytek Finishes Div.) to the "Criton Partnership" and becomes a General Partner in the partnership.

6/27/87: BSB withdraws from the partnership in exchange for the Aerospace Group (Hytek and Heath Tecna Aerospace Divisions).

1/25/88: BSB sells spray paint operation of Hytek Finishes Division and parcels A-F of site for $149,500,000.

**Phoenix Washington, Inc.** (later renamed Heath Tecna Aerospace Co.)

9/27/89: BSB sells remaining assets of Hytek Finishes Division (less Parcel G) for $14,400,000.

**BSB**

**Esterline Corp.**

**Criton Technologies Partnership** (Partners are Criton Corp, BSB, Royal Zenith Corp.) Created 11/26/83

9/27/89: Criton Partnership sells all remaining assets to Esterline for $98,600,000