Kern, Leila R., J.

INTRODUCTION

In Phase I of this litigation, the plaintiff utility companies seek to obtain excess liability coverage from the defendant insurers in connection with the cleanup of environmental contamination at the sites of former manufactured gas plants in Lynn, Salem and Malden. This matter is before the court on the Fund’s motion for partial summary judgment pursuant to Mass.R.Civ.P. 56 on the “named insured” defense and the plaintiffs’ cross motion for partial summary judgment on that issue. For the reasons discussed below, the Fund’s motion is DENIED and the plaintiffs’ cross motion is ALLOWED.

DISCUSSION

The Malden site was initially operated by the Mystic Valley Gas Company, in which NEES acquired a controlling interest in 1947. The Salem site was initially operated by North Shore Gas Company, in which NEES acquired a controlling interest in 1947. The Lynn site was initially operated by the Lynn Gas and Electric Company, in which NEES acquired a controlling interest in 1957.
In 1972, NEES sold its three gas subsidiaries, Lynn Gas, Mystic Valley Gas, and North Shore Gas, to Eastern Gas and Fuel Associates (“Eastern”). Eastern’s subsidiary, Boston Gas, entered into a 1973 Agreement for Purchase and Sale of Assets and Assumption of Liability under which Lynn Gas, Mystic Valley Gas, and North Shore Gas sold Boston Gas “all of such Seller’s assets and properties, as then constituted, tangible and intangible, wherever located including without limitation all of Seller’s utility plant, distribution system, franchises, rights, licenses, patents, copyrights, trademarks, and contracts” and Boston Gas agreed to assume all of the liabilities of the three gas subsidiaries “as then existing.” The Agreement does not specifically mention the transfer of insurance policies.
Boston Gas has asserted a claim for coverage under three excess liability insurance policies issued to NEES by Home and two excess liability insurance policies issued to NEES by Midland. It is undisputed that Boston Gas is not a named or additional insured under these policies. Boston Gas claims that it succeeded to the insurable interests under the policies when it acquired the assets of Lynn Gas Company, Mystic Valley Gas Company and North Shore Gas Company, and seeks coverage under NEES’ pre-1974 policies only for its liabilities as a successor based on the pre-1974 MGP operations of the NEES gas subsidiaries.
All of the Home policies contain a “no assignment” clause which states: “Assignment of interest under this Policy shall not bind the Company until their [sic] consent is endorsed hereon.” Although the Midland policies themselves do not contain a “no assignment” clause, they state: “Except as may be inconsistent with this Policy, the coverage provided by this Policy shall follow the insuring agreements, conditions and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverage provided by this Policy, including any change by endorsements.” The insurers never consented to the transfer of the policies to Boston Gas.
An assignment is a contract whose words, when free from ambiguity, must be construed in their usual and ordinary sense. Larabee v. Potvin Lumber Co., 390 Mass. 636, 641 (1983). See also Kagan v. Wattendorf & Co., Inc., 294 Mass. 588, 596 (1936) (no particular words are necessary to constitute an assignment; all that is required are words which fairly indicate an intent to transfer an interest). The language of the 1973 Agreement is broad enough to encompass assignment of the insurance policies at issue. See, e.g., B.S.B. Diversified Co., Inc. v. American Motorists Ins. Co., 947 F.Sup. 1476, 1479 (W.D.Wash. 1996) (sale of “all assets . . . whether tangible or intangible” transferred insurance policy rights for environmental cleanup liability).
Nonetheless, the Fund contends that any purported transfer of the policies to Boston Gas is ineffective because of the policies’ no-assignment clause. It is well settled that parties to a contract can agree that it shall *146 be non-assignable both at law and in equity. Security Nat. Bank v. General Motors Corp., 345 Mass. 434, 442 (1963). The purpose of a no-assignment clause is to protect the insurer against an increase in risk and hazard of loss by a change in the identity of the insured. Whiting v. Burkhardt, 178 Mass. 535, 538 (1901). See also 3 Couch on Insurance 3d, §35:3 (2000). Accordingly, the general rule is that no-assignment clauses do not prevent an assignment after loss, which is merely the transfer of a right to a money claim. 3 Couch on Insurance 3d, §35:7 (2000). See also Dadmun Mfg. Co. v. Worcester Mut. Fire Ins. Co., 52 Mass. 429, 435 (1846) (after loss, policy is a mere chose in action which may be assigned). At least one court has applied this principle in the third-party policy context to permit the transfer to a successor of coverage for environmental contamination occurring prior to the asset sale. See Gopher Oil v. American Hardware Mut Ins. Co., 588 N.W.2d 756, 763-64 (Minn.App. 1999) (transfer of insurance coverage valid despite no-assignment clause where contamination occurred during policy periods, prior to asset sale, although CERCLA had not yet been enacted). But see Henkle Corp. v. Hartford Accident & Indemnity Co., 62 P.3d 69, 75-76 (Cal. 2003) (assignment of insurance benefits invalid without insurer’s consent because although exposure to harmful chemicals had already occurred before asset transfer, claims under policy had not been reduced to a sum of money due, and assignment would increase risk to insurer because predecessor was still in existence); Quemetco, Inc. v. Pacific Automobile Ins. Co., 24 Cal.App. 4th 494, 502-03 (Cal.Ct.App.2d Dist. 1994) (no transfer of insurance rights where at time of asset sale, there was no loss or injuiy since environmental clean up damages were not assessed until 17 years later). Here, where the policies at issue were triggered by property damage occurring during the policy periods, the transfer of the right to recover for contamination occurring prior to the 1974 asset sale would not contravene the purpose of the no-assignment clause or increase the risk to the insurers.
Finally, this Court is not persuaded by the Fund’s contention that as a matter of law, Boston Gas has no coverage under the policies at issue because the First Circuit concluded in John S. Boyd Co., Inc. v. Boston Gas Co. that Boston Gas did not have successor liability under CERCLA for the contamination at the Lynn site, either by contract or under the de facto merger, mere continuation or fraudulent transaction exceptions to the general rule against successor liability. See id. 992 F.2d 401, 406, 408-09 (1st Cir. 1993). Despite this ruling, Boston Gas faced property damage claims by DEP and third parties with respect to the Salem and Malden sites and, given some uncertainty in the evolving area of successor liability, entered into a settlement which it believed to be reasonable.

ORDER

For the foregoing reasons, it is hereby ORDERED that the Fund’s motion for partial summary judgment on the “named insured” defense be DENIED and that the plaintiffs’ cross motion for partial summary on the “named insured” defense be ALLOWED. It is hereby ADJUDGED and DECLARED that the rights of Mystic Valley Gas Company and North Shore Gas Company under the Home and Midland policies with respect to pre-transfer occurrences were effectively transferred to Boston Gas with the December 20, 1973 closing of the asset purchase.