**CENTURY INDEMNITY COMPANY, as successor to CCI Insurance Company, as successor to Insurance Company of North America, One Beacon Insurance Company, and Continental Insurance, Plaintiffs/Counterclaim–Defendants,**

v.

**AERO–MOTIVE COMPANY, Aero–Motive Manufacturing Company, William Becker, and Roger Becker, Defendants/Counterclaim–Plaintiffs.**

No. 1:02–CV–108.

United States District Court,
W.D. Michigan,
Southern Division.

Dec. 17, 2003.

Brian C. Coffey, William M. Cohn, Cohn Baughman & Martin, Chicago, IL, Susan Wilson Keener, Carole D. Bos, Bos & Glazier, P.L.C., and David Bloss, Betz & Bloss, PC, Grand Rapids, MI; Kathleen A. McQueeny, Meckler, Bulger & Tilson, Chicago, IL, for Plaintiffs/Counterclaim–Defendants.

Eric C. Fleetham, Charles M. Denton, Matthew B. Eugster, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, MI, for Defendants/Counterclaim–Plaintiffs.

## *OPINION*

QUIST, District Judge.

This case involves an insurance dispute regarding coverage for environmental damage. The insurers, Century Indemnity Company ("Century") and One Beacon Insurance Company ("One Beacon") filed this action seeking a declaration that they are not obligated to Defendants (collectively "Aero") under certain policies that they issued and that they are not obligated to satisfy a consent judgment among Defendants. Continental Insurance ("Continental") was subsequently permitted to intervene as a plaintiff. Now before the Court are Aero's motion for partial summary judgment regarding the insurers' duty to defend and motion to dismiss Count V of Century's amended complaint. The insurers have also filed motions pursuant to Fed.R.Civ.P. 56(f) to defer ruling on the summary judgment motions pending the completion of further discovery.

### I. *Facts and Procedural History*

Defendant Aero–Motive Manufacturing Company ("Aero I") was formed in approximately 1939 and manufactured cable and hose reels until 1972. Defendants William Becker and Roger Becker (the "Beckers") owned and operated Aero I between 1960 and 1972. In 1972, Aero I sold its assets to Kalaco, Inc., a subsidiary of the Daniel Woodhead Company. Kalaco, Inc. later changed its name to Aero–Motive Manufacturing Company ("Aero II"). Pursuant to the asset purchase agreement between Aero I and Aero II,

Aero I assigned various contracts to Aero II, including INA Policy XBC 76888 and American Employers Policy AD 40018–13. (Asset Purchase Agreement ¶ 10(e)(ii), Defs.' Century Reply Br. Ex. A; Asset Purchase Agreement Schedule D, Defs.' Century Reply Br. Ex. B; Assignment, Defs.' Century Reply Br. Ex. C.)

In the early 1990's, Aero II discovered contamination at the site of the Aero I manufacturing plant located on ML Avenue in Kalamazoo, Michigan (the "Property"), which Aero II had operated since 1972. Subsequent investigation revealed that contamination had migrated from the Property to an area one mile downgradient. As a result, Aero II was required to take remedial action in response to claims by the Michigan Department of Environmental Quality ("MDEQ") and incurred costs to clean up the contamination. In August 1995, Aero II notified the Beckers of their potential liability for the contamination and clean up costs.

Century, Continental, and One Beacon, or their predecessors, issued comprehensive general liability policies to Aero I between January 1964 and July of 1972. Century's predecessor, Insurance Company of North America ("INA"), insured Aero I from January 19, 1964, to January 19, 1965, under Policy No. LAB 16925, and from January 19, 1965, to July 1, 1965, under Policy No. LAB 16994. Continental insured Aero I from July 1, 1965, to July 1, 1968, under Policy No. CBP 40559. One Beacon's predecessor, American Employers, insured Aero I from July 1, 1968, to July 1, 1971, under Policy No. A 13 40007–31, and from July 1, 1971, to July 1, 1972, under Policy No. AD 40018–13. In addition to these policies (the "Primary Policies"), Aero I had coverage from August 11, 1964, to August 11, 1973, under excess umbrella policies (the "Excess Policies") issued by INA.

In 1999, Aero II filed suit against the Beckers, alleging that they were liable to Aero II for clean-up costs (the "Becker suit"). The Beckers notified Century, Continental, and One Beacon of the lawsuit. Century agreed to fund forty percent of the Beckers' defense costs, subject to a reservation of rights. In 2001, Aero II filed suit against Aero I (the "Aero I suit") for recovery of clean-up costs. Century agreed to fund all of Aero I's defense costs in that suit, subject to a reservation of rights.

On February 7, 2002, Aero II, Aero I, and the Beckers signed and filed a consent judgment in the Becker suit. Pursuant to the terms of the consent judgment, the Beckers agreed to pay $100,000 and Aero II agreed to seek the balance of the $5 million judgment from Aero I's and the Beckers' insurers. Century and One Beacon then filed this action, seeking a declaration that they are not obligated to Aero under their respective policies and that they are not bound by the Consent Judgment. Continental joined the suit as an intervening plaintiff.

On February 18, 2003, the Court entered an Opinion and Order which, among other things, granted Aero's motion for partial summary judgment with respect to the existence and terms of all of the Primary Policies except Continental Policy No. CBP 40559, for the period July 1, 1966, to July 1, 1968. By Memorandum Order dated April 4, 2003, the Court granted Aero's motion for reconsideration and granted summary judgment to Aero on Continental Policy No. CBP 40559, for the period July 1, 1966, to July 1, 1968. In sum, the Court found that there was no genuine issue of material fact regarding the material terms of each of the Primary Policies, including coverage for property damage, a separate defense obligation, the

limits of liability, and the absence of a pollution exclusion.

## II. *Motion Standards*

■ An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice,* ¶ 12.34[1][b] (3d ed.1997). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)(citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## III. *Discussion*

In the instant motion, Aero seeks partial summary judgment regarding the insurers' duty to defend under their respective policies. Specifically, Aero contends that it is entitled to the defense costs incurred by the Beckers in defending against Aero II's claims in the Becker suit and that it is entitled to the costs and attorney fees incurred by Aero II during the remedial investigation of the Property, in defending against the MDEQ's claims, and in searching for additional potentially responsible parties. Aero argues that the insurers are jointly and severally liable for these costs. In addition, Aero asserts that it is entitled to twelve percent penalty interest pursuant to M.C.L. § 500.2006. Finally, Aero requests that the Court dismiss Count V of Century's Amended Complaint seeking recovery of any excess defense costs Century paid for the Beckers' defense in the Becker suit.

### A. Defendants' Motion Regarding the Duty to Defend

#### 1. The Duty to Defend

■ Under Michigan law, an insurer's duty to defend is determined by examining the allegations of the complaint against the insured. *Detroit Edison Co. v. Mich. Mut. Ins. Co.,* 102 Mich.App. 136, 141–42, 301 N.W.2d 832, 835 (1981). The duty to defend is broader than the duty to indemnify. *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.,* 452 Mich. 440, 450–51, 550 N.W.2d 475, 481 (1996). "If the allega-

tions of a third party against the policy-holder even arguably come within the policy coverage, the insurer must provide a defense." *Id.* The threshold is not whether the claim is actually covered, but whether it is arguably covered by the policy. *Cincinnati Ins. Co. v. Zen Design Group, Ltd.,* 329 F.3d 546, 552 (6th Cir.2003). The duty to defend is separable from the duty to indemnify, and the issue of whether the insurer may ultimately be liable to indemnify the insured is not relevant to determining whether the insurer has a duty to defend. *Dochod v. Cent. Mut. Ins. Co.,* 81 Mich.App. 63, 67, 264 N.W.2d 122, 123–24 (1978).

The insurers do not dispute that the allegations set forth in Aero II's complaint in the Becker suit regarding environmental damage to the Property fall within the property damage coverage provided by their respective policies. In fact, as noted above, Century agreed to fund forty percent of the Beckers' defense in the Becker suit and one hundred percent of Aero I's defense in the Aero I suit. However, each insurer raises various grounds for denying Aero's motion on the duty to defend, some of which are common to all the insurers and some of which are unique to an individual insurer.

### a. Whether Aero II Has Rights As An Insured Under The Policies

■ The insurers contend that Aero II cannot claim a right to a defense under their policies because the policies were issued to Aero I, and Aero II is an entirely different entity and is not an insured under the policies. Aero contends that Aero II is entitled to a defense under the policies upon two grounds. First, Aero contends that Aero I's rights and interests under the policies were transferred to Aero II by operation of law. Second, Aero contends that Aero II is an insured under Century/INA Excess Policy No. XBC 76888, covering the period from August 11, 1970, to August 11, 1973, and under American Employers Policy No. AD 40018–13, covering the period from July 1, 1971 to July 1, 1972, by virtue of the assignment of those policies by Aero I to Aero II.

As support for its "operation of law" argument, Aero relies on the Ninth Circuit's decision in *Northern Insurance Co. of New York v. Allied Mutual Insurance Co.,* 955 F.2d 1353 (9th Cir.1992). *Northern Insurance* involved a dispute between two insurers regarding payment of defense costs in a product liability suit. The plaintiffs in the underlying suit, a husband and wife, alleged that the wife's consumption of California Coolers during her pregnancy caused their child to suffer from fetal alcohol syndrome. Prior to the time the suit was filed, but after the birth of the plaintiffs' child, Brown–Forman Corporation ("Brown–Forman") purchased California Cooler's assets. The purchase agreement provided that California Cooler would indemnify Brown–Forman for product liability claims arising from California Cooler's pre-sale activities and that Brown–Forman would not assume any obligation for such claims. Brown–Forman tendered the defense to Northern Insurance Company ("Northern"), which insured California Cooler during the last 12 days of the pregnancy. Northern subsequently tendered the defense to Allied Mutual ("Allied"), which insured California Cooler during several months of the pregnancy. After the plaintiffs dismissed their suit, Northern sued Allied, seeking contribution for defense costs. The district court held that although the Allied policy was excluded from the assets assigned to Brown–Forman pursuant to the asset purchase agreement, California Cooler's rights under the Allied policy, including the right to a defense, transferred to Brown–Forman by operation of law. The Ninth Circuit affirmed on that issue. 955 F.2d at 1361. The court held that although the Allied

policy did not transfer to Brown–Forman by assignment, the benefits under the policy transferred to Brown–Forman by operation of law. *Id.* at 1357–58. The court reasoned that because Brown–Forman automatically became liable for California Cooler's pre-sale activities under California's and Washington's product-line rule of successor liability when it purchased California Cooler's assets, the rights under the policy to a defense and indemnity "followed the liability rather than the policy itself." *Id.* at 1357.

The *Northern Insurance* court cited *Ocean Accident & Guarantee Corp. v. Southwestern Bell Telephone Co.*, 100 F.2d 441 (8th Cir.1939), as support for its "transfer by operation of law" rule. In *Ocean Accident*, the defendant purchased the assets of the Kansas City Telephone Company and received an assignment of assets, including an employers' liability policy issued by Ocean Accident. The policy prohibited assignment without the insurer's consent. Although Ocean Accident gave its consent, the consent was limited to claims arising after the asset sale. Following the sale, Southwestern Bell tendered to Ocean Accident for defense three claims by persons who were employees of Kansas City Telephone at the time the injuries occurred. Ocean Accident denied coverage on the basis that Southwestern Bell was not the insured under the policy. The court stated the general rule that "an executory contract in which the personal character of one of the parties is an important element is not assignable without the consent of the parties," but noted that the rule is not applicable where the event giving rise to the liability occurs before the assignment. 100 F.2d at 444. The court held that the clause prohibiting assignment without Ocean Accident's written consent was inapplicable because the liability had become fixed prior to the assignment, and Kansas City Telephone's rights under the policy were assignable to South-

western Bell in the same manner as any other claim may be assigned. *Id.* at 445–46.

Aero cites two cases, *Total Waste Management Corp. v. Commercial Union Insurance Co.*, 857 F.Supp. 140 (D.N.H. 1994), and *B.S.B. Diversified Co. v. American Motorists Insurance Co.*, 947 F.Supp. 1476 (W.D.Wash.1996), in which the courts applied the *Northern Insurance* transfer "by operation of law" reasoning to liability for environmental contamination. In *Total Waste Management*, the plaintiff, Total Waste Management ("TWM"), filed suit against several insurers, including Maine Bonding & Casualty Company, seeking a declaration that they were obligated to defend and indemnify TWM in an action brought by a third party to recover the cost of cleaning up environmental contamination. TWM sought coverage under a policy Maine Bonding issued to George West, from which TWM purchased assets. Maine Bonding moved for summary judgment, arguing that TWM was not an insured under the policy, was not an insured as a result of its purchase of assets from George West, and was not an assignee of the George West policy. The court denied Maine bonding's motion because a genuine issue of material fact remained with regard to the issue of whether TWM was George West's successor and because the product-line successor rationale in *Northern Insurance* provided an appropriate basis for transferring benefits under the policy to TWM. Although it acknowledged that *Northern Insurance* involved product-line successor liability, the court found "the Ninth Circuit's reasoning ... persuasive authority in deciding whether a potential corporate successor is entitled to coverage under its predecessor's insurance policy for a risk occurring before the transfer of assets." 857 F.Supp. at 152. Similarly, the court in *B.S.B. Diversified* held that the *Northern Insurance* rationale should

apply to liability under CERCLA. *See* 947 F.Supp. at 1481–82. The plaintiff in that case purchased the assets and assumed the liabilities of the previous owner of contaminated property. The insurance policy was issued to the seller and covered contamination of the property by the seller for a period prior to the time the plaintiff purchased the property. Although recognizing that the case did not involve successor product liability as in *Northern Insurance,* the court found "[t]he principle that insurance follows liability ... equally as valid" where a successor is responsible for environmental cleanup of contamination occurring prior to transfer of liability. *Id.* at 1481.

As Century and the other insurers note, several courts have declined to follow or apply *Northern Insurance.* Two cases from the California Court of Appeals, *Quemetco Inc. v. Pacific Automobile Insurance Co.,* 24 Cal.App.4th 494, 29 Cal. Rptr.2d 627 (1994), and *General Accident Insurance Co. of America v. Superior Court,* 55 Cal.App.4th 1444, 64 Cal.Rptr.2d 781 (1997), declined to find a transfer of insurance policies by operation of law under *Northern Insurance. Quemetco, Inc.,* involved a situation much like that before the Court, where a purchaser of assets sought coverage under insurance policies issued to the predecessor company for two lawsuits brought under CERCLA, based upon contamination by the predecessor prior to the asset sale. The court, finding guidance from *Oliver Machinery Co. v. United States Fidelity & Guaranty Co.,* 187 Cal.App.3d 1510, 232 Cal.Rptr. 691 (1986), and *Penasquitos, Inc. v. Superior Court,* 53 Cal.3d 1180, 283 Cal.Rptr. 135, 812 P.2d 154 (1991)—two cases not discussed by the *Northern Insurance* court— held that the insurance policies were not transferred to the plaintiff. *See Quemetco Inc.,* 24 Cal.App.4th at 499–501, 29 Cal. Rptr.2d 627. *Oliver Machinery* refused to extend successor liability for products lia-

bility claims to insurance policies, in somewhat of a reverse fashion, by holding that a successor's policy did not cover a product manufactured by the predecessor so as to obligate the insurer to defend a distributor of the predecessor's products, and *Penasquitos* held that an insurer which issued an insurance policy to a dissolved corporation had a duty to defend, even though the insured corporation was dissolved. *Id.* at 500, 29 Cal.Rptr.2d 627. The *Quemetco, Inc.* court concluded that the rationale of *Northern Insurance* did not apply because the plaintiff "was found to be liable for hazardous waste cleanup costs based on an act passed after it purchased [the predecessor's] assets" and "no liability passed as a matter of law at the time of the asset sale as no such liability existed at that time." *Id.* at 501, 29 Cal.Rptr.2d 627.

The court in *General Accident* gave a more forceful rejection of *Northern Insurance.* In *General Accident,* a successor corporation sought insurance coverage under insurance policies issued to its predecessor for claims in asbestos products liability cases. The successor's only theory of liability was that the rights under the policies were transferred by operation of law. In rejecting *Northern Insurance,* the court began by noting that *Ocean Accident,* upon which *Northern Insurance* relied, dealt with an assignment and, therefore, did not support the result in *Northern Insurance.* The court stated:

> An insured-insurer relationship is a matter of contract. Successor liability is a matter of tort duty and liability. It is one thing to deem the successor corporation liable for the predecessor's torts; it is quite another to deem the successor corporation a party to insurance contracts it never signed, and for which it never paid a premium, and to deem the insurer to be in a contractual relationship with a stranger.

*General Accident,* 55 Cal.App.4th at 1451, 64 Cal.Rptr.2d 781. The court also observed that *Northern Insurance* was contrary to other California cases, including *Oliver Machinery,* which establish that insurance coverage must be determined under contract principles. *See id.* at 1451–54, 64 Cal.Rptr.2d 781. The court concluded that the "operation of law" rationale in *Northern Insurance* could not be sustained:

> The relevant appellate authority supports [the insurers'] argument that a transfer by operation of law is a violation of the basic principles of contract and is also bad public policy. Under [the *Northern Insurance* rationale], an insurer which was never a party to an insurance contract would be held liable to an "insured" that has never paid a premium or been subjected to an underwriting analysis. The law can impose tort liability on a successor corporate entity; it cannot impose a contractual insurance relationship between an insurer and a stranger to the insurance contract.

*Id.* at 1454–55, 64 Cal.Rptr.2d 781.

In *Red Arrow Products Co. v. Employers Insurance of Wausau,* 233 Wis.2d 114, 607 N.W.2d 294 (2000), a case in which the plaintiff-successor corporation ("New Red Arrow") sought coverage for CERCLA response costs under policies issued to its predecessor ("Old Red Arrow"), the Wisconsin Court of Appeals opted to follow *Quemetco* and *General Accident* in concluding that tort principles of successor liability should not be applied to extend insurance coverage to non-parties to the insurance policy. The court observed:

> The successor liability rule was intended to protect an individual who, not being in a contractual relationship with a manufacturer, cannot otherwise protect himself or herself from an injury arising from a product manufactured by a company that no longer exists. . . .
>
> The policies driving the product-line successor liability rule ... are clearly not at play here. First, the EPA sought recovery from New Red Arrow and Old Red Arrow for CERCLA response costs in connection with the Lemberger sites. Regardless of whether New Red Arrow obtains coverage from Wausau, the EPA was not prevented from pursuing its action against New Red Arrow despite the fact that Old Red Arrow was succeeded by New Red Arrow. Second, the need to spread the costs associated with environmental cleanup has not risen to the same level of public concern as the need to protect otherwise defenseless victims from manufacturing defects. New Red Arrow does not contend that environmental hazards will go unaddressed without the transfer of insurance policies to succeeding business entities. Accordingly, the policy reasons that bolster rules of strict liability and product-line successor liability do not support their application in the present case.

233 Wis.2d at 133–34, 607 N.W.2d at 302–03. *See also Glidden Co. v. Lumbermens Mut. Cas. Co.,* No. 409039, slip op. at 25 (Ohio Common Pleas May 8, 2002) (rejecting *Northern Insurance's* "operation of law" rationale and observing that *Northern Insurance* "did not present the case, as here, where the insurance companies would have to potentially defend two or more parties rather than a single insured which once held the assets").

The Court has not found, and the parties have not cited, any Michigan case addressing the issue of whether the rights under an insurance policy may transfer to a successor corporation by operation of law. Having considered the cases cited by the parties, this Court declines to follow *Northern Insurance* because it concludes

that the Michigan Supreme Court would not adopt the *Northern Insurance* theory that insurance coverage transfers to a successor corporation by "operation of law." The Court agrees with the reasoning of *General Accident* that the relationship between an insurer and an insured is determined under contract principles rather than upon public policy. Aero II is not a named insured under the Century policies, never paid any premium on the policies, and, except for the assignment of the Century/INA and American Employer/One Beacon policies, never received an assignment of Aero I's rights under the policies. Moreover, as the courts in *Quemetco, Inc.* and *Red Arrow Products* observed, the successor's liability in a case such as this did not exist at the time of the asset sale, but rather was imposed years later when CERCLA was enacted. Aero argues that denying coverage to Aero II will create a windfall for Century by allowing it to avoid its obligations under the policies. Aero asserts that because the risk is the same, substituting Aero II in place of Aero I as the insured for coverage for pre-sale contamination by Aero I will not increase the risk Century agreed to assume in exchange for payment of the premiums by Aero I. The facts in this case refute Aero's argument, because requiring Century to provide a defense to Aero II would mean that Century would face the real, and not merely potential, increased burden of having to provide a defense not only to Aero I and the Beckers for the claims by Aero II, but also to Aero II for the MDEQ's claims. Thus, the operation of law theory is rejected.

■ As an alternative theory, Aero contends that Century and One Beacon are obligated to defend Aero II under INA Excess Policy No. XBC 76888 and American Employers Policy No. AD 40018–13 because those policies were expressly assigned by Aero I to Aero II. Century and One Beacon respond that any purported

assignment was invalid because their policies contain non-assignment clauses which preclude assignment of the policies without the written consent of the insurer. Century and One Beacon contend that the assignment was invalid because they did not consent to the assignment. Aero concedes that consent was never obtained, but it asserts that a lack of consent does not invalidate the assignment because the loss occurred prior to the assignment and therefore did not increase the insurers' risk.

■ Michigan law recognizes the validity of contractual provisions against assignment of contracts, including insurance policies. *See Employers Mut. Liab. Ins. Co. v. Mich. Mut. Auto. Ins. Co.*, 101 Mich. App. 697, 702, 300 N.W.2d 682 (1980) (holding that an assignment in violation of an anti-assignment clause voided coverage under the policy); *Edwards v. Concord Dev. Corp.*, No. 174487, 1996 WL 33358104, at *1–2 (Mich.Ct.App. Sept.17, 1996) (per curiam) (concluding that an assignment by the insured without the insurer's written consent as required by the policy was not binding upon the insurer). However, an anti-assignment clause will not be enforced where a loss occurs before the assignment, because in that situation the assignment of the claim under the policy is viewed no differently than any other assignment of an accrued cause of action. *Action Auto Stores, Inc. v. United Capitol Ins. Co.*, 845 F.Supp. 417, 423 (W.D.Mich.1993). Thus, in *Roger Williams Insurance Co. v. Carrington*, 43 Mich. 252, 5 N.W. 303 (1880), the court observed:

The assignment having been made after the loss did not require consent of the company. The provision of the policy forfeiting it for an assignment without the company's consent is invalid, so far as it applies to the transfer of an ac-

crued cause of action. It is the absolute right of every person—secured in this state by statute—to assign such claims, and such a right cannot be thus prevented. It cannot concern the debtor, and it is against public policy.

*Id.* at 254, 5 N.W. at 304,.

■ Aero contends that the consent to assignment provision does not apply in this case because the loss occurred prior to assignment of the policies, i.e., pollutants which caused environmental damage were released on the property prior to the time Aero I assigned the policies to Aero II. This argument fails for three reasons. First, as Aero must concede, there is at a minimum a genuine issue of material fact as to whether the release or releases that caused the environmental damage occurred before or after Aero II purchased Aero I's assets. Thus, the entire premise of Aero's argument is subject to a factual dispute, precluding summary judgment. Second, and more importantly, Aero I did not have a claim or accrued cause of action under the policies to assign to Aero II. Even if a release occurred prior to the assignment, the damages associated with the environmental cleanup were not assessed until almost two decades after the 1972 asset sale. Aero I had no claim against Century or One Beacon for defense or indemnification under the policies as no claim had been made against Aero I. In *Henkel Corp. v. Hartford Accident and Indemnity Co.,* 29 Cal.4th 934, 129 Cal. Rptr.2d 828, 62 P.3d 69 (2003), a factually similar case, the California Supreme Court rejected a successor corporation's argument that notwithstanding a consent-to-assignment clause, an assignment was effective to transfer coverage under a liability policy because the event giving rise to the liability occurred prior to the assignment. The court reasoned that at the time of the assignment, the insurers' duty to defend and indemnify had not become an accrued cause of action because the "claims had not been reduced to a sum of money due or to become due under the policy [and the insurers] had not breached any duty to defend or indemnify." 29 Cal.4th at 944, 62 P.3d at 75. In the same vein, Century and One Beacon did not have any obligation to Aero I under the policies at the time of the assignment. Michigan follows the majority rule that an insurer's responsibility under a liability policy accrues at the time the complainant suffers damage rather than at the time of the negligent act. *Employers Mut.,* 101 Mich.App. at 703, 300 N.W.2d at 685. No claim of damage was made until long after Aero I assigned the policy. *See Quemetco Inc.,* 24 Cal.App.4th at 503, 29 Cal.Rptr.2d 627 ("In this case, at the time of the asset sale, there could have been no assignment of the proceeds of the policies as there was no loss or injury or accrued right to collect the proceeds in existence. The cleanup damages were not assessed until 1987, long after the 1970 sale."). Finally, giving effect to the assignment without Century's consent would increase Century's risk under the policy by forcing it to defend not only Aero I and the Beckers but also Aero II. As stated in *Henkel:*

> If both assignor and assignee were to claim the right to defense, the insurer might effectively be forced to undertake the burden of defending both parties. In view of the potential for such increased burdens, it is reasonable to uphold the insurer's contractual right to accept or reject an assignment.

29 Cal.4th at 945, 62 P.3d at 75; *see also Quemetco Inc.,* 24 Cal.App.4th at 503, 29 Cal.Rptr.2d 627 ("In the instant case, both Old Quemetco and New Quemetco assert coverage under respondents' policies. Thus, unless the consent clauses are enforced, respondents would be faced with the increased risk of having to defend two corporations.") This is exactly the situation presented here. Accordingly, Aero

has failed to show that any of the insurers have an obligation to defend Aero II.

### b. Whether The Beckers Are Insureds Under The One Beacon Policies

One Beacon contends that the motion must also be denied with respect to the Beckers because Aero I was the named insured under the policies and Aero has not shown that the Beckers are within the "Persons Insured" provision in the policies. One Beacon notes that the "Persons Insured" provision is missing from the policy documents produced by Aero, and therefore, the Beckers have not met their burden of showing that they were insureds entitled to a defense. The Court rejects this argument, because Aero has submitted Form MLB 200, which contains the missing provision. The Court previously held that Form MLB 200 was competent evidence of the terms of One Beacon's policies. The "Persons Insured" provision states that an insured includes "any executive officer, member of the board of trustees, directors or governors or stockholder" of an insured corporation. (Defs.' One Beacon Reply Br. Ex. A.) It is undisputed in this case that the Beckers were officers, directors, and shareholders of Aero I. Therefore, the Beckers were insured under One Beacon's policies and are entitled to a defense from One Beacon.

### c. Whether Aero Must Show That Continental's Policy Has Been Triggered

■ Continental argues that it does not have a duty to defend because the evidence developed in the Becker case demonstrates that Continental's policy was not triggered. The Court rejects this argument, because while the issue is germane to Continental's duty to indemnify the Beckers or Aero I, it has no relevance to Continental's duty to defend. *Cf. Aetna Cas. & Sur. Co. v. Dow Chem. Co.,* 44

F.Supp.2d 847, 856 (E.D.Mich.1997) (stating that an insurer "cannot wait until the defense of an underlying claim has been completed to complain that [it] did not owe a duty to defend because from hindsight it could be established that" there was no duty to indemnify). As discussed above, the duty to defend is determined by asking whether the allegations of the complaint even arguably come within the policy's coverage. If they do, the insurer has a duty to defend. Moreover, an insurer is obligated to defend until it can be established that the claims asserted are outside the scope of coverage under the policy. *See Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.,* 452 Mich. 440, 455, 550 N.W.2d 475, 483 (1996). While Continental has cited evidence supporting its assertion that the contamination occurred outside of Continental's policy period, this Court did not make that determination in the Becker case and, in fact, denied the Becker's motion for summary judgment. Continental has thus not shown that the claims in the Becker case were limited to time outside the period of coverage provided by Continental's policy.

### d. Whether Continental Is Relieved Of Its Defense Obligation By The Beckers' Late Notice

Continental argues that it does not have a duty to defend because the Beckers failed to give Continental timely notice of the claim as required by the policy. Although One Beacon did not specifically raise untimely notice as an issue in its brief, One Beacon's counsel pointed out at oral argument that the Beckers provided notice to One Beacon after they provided notice to Continental. Thus, the Court will also consider this argument with respect to One Beacon.

■ The requirement of timely notice allows the insurer "an opportunity to

investigate the facts and circumstances affecting the question of liability and the extent of such liability." *Wehner v. Foster*, 331 Mich. 113, 119, 49 N.W.2d 87, 90 (1951). Delay in giving notice is not a ground for excusing an insurer from performing its obligations under a policy. *Wendel v. Swanberg*, 384 Mich. 468, 478, 185 N.W.2d 348, 353 (1971). Instead, an insurer will not be relieved of it obligations to the insured unless the insurer can show that it has been prejudiced by the delay. *West Bay Exploration Co. v. AIG Specialty Agencies of Texas, Inc.*, 915 F.2d 1030, 1036 (6th Cir.1990). Prejudice may not be presumed. *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 10 F.Supp.2d 800, 812 (E.D.Mich.1998). It is incumbent upon the insurer to demonstrate actual prejudice resulting from the insured's delay. *Upjohn Co. v. Aetna Cas. & Sur. Co.*, 768 F.Supp. 1186, 1202 (W.D.Mich.1990). In determining whether an insurer has been prejudiced, a court may consider "whether the delay has materially impaired the insurer's ability: (1) to investigate liability and damage issues; (2) to evaluate, negotiate, defend, or settle a claim or suit; (3) to pursue claims against third parties; (4) to contest the liability of the insured to a third party; and (4)(sic) to contest its liability to the insured." *Aetna Cas. & Sur. Co.*, 10 F.Supp.2d at 813.

Continental contends that it was prejudiced because: (1) Aero II has filled in the disposal pit, which Aero II claims is a significant source of contamination; (2) the small degreaser used by Aero I, the large degreaser used by Aero II, and the underground storage tank have been destroyed; (3) potential witnesses have died, including maintenance workers Ray Brackett and Gene Fredericks; and (4) substantial sums of money have been spent and commitments have been made to the MDEQ for remediation.

 Aero argues that Continental's notice argument should be rejected because timely notice is not a condition precedent to an insurer's duty to defend. Aero cites *Aetna Casualty & Surety Co. v. Dow Chemical Co.*, 44 F.Supp.2d 847 (E.D.Mich.1997), and *Upjohn Co. v. Aetna Casualty and Surety Co.*, 768 F.Supp. 1186 (W.D.Mich.1990), as support for the proposition that an insurer may refuse to defend on the grounds of late notice. In *Aetna*, the issue before the court was whether the insured was entitled to recover its pre-tender defense costs. The insurers argued that they had no obligation to reimburse for defense costs because absent timely notice and a formal tender of the defense, an insurer has no duty to defend, and therefore, there could be no breach of the duty to defend. The court disagreed. It found that under Michigan law the duty to defend arises when the underlying claim is brought against the insured and, therefore, the duty to defend precedes the insured's obligation to give notice. 44 F.Supp.2d at 857. The court therefore concluded that unlike the duty to indemnify, timely notice is not a precondition to the duty to defend. *Id.* at 857–58 (stating that "it makes no sense to argue that the duty to defend, which is broader than the duty to indemnify, is conditioned upon timely notice"). *Upjohn Co. v. Aetna Casualty and Surety Co.*, cited in *Aetna*, reached a similar conclusion. There, the court was addressing the late notice issue with respect to both the insurer's duty to defend and its duty to indemnify. With regard to the duty to defend, the court found that summary judgment for the insured was proper "because the duty to defend standard is triggered where the allegations in the complaint are even arguably within the insurance policy's protection." 768 F.Supp. at 1203. The court observed: "In assessing the duty to defend, facts outside the allegations that

might negate coverage are not properly considered. . . . The late notice facts are thus inappropriate to a discussion of the duty to defend—they certainly go beyond the allegations and the policy language." *Id.*

The Court agrees with the reasoning in *Aetna* and *Upjohn* that an insurer may not escape its duty to defend by arguing that the insured failed to provide timely notice of the underlying claim. This rule makes sense because if the insurer's duty to defend arises when the underlying suit is filed—which the Court finds that it does under Michigan law—untimely notice should not relieve an insurer of its preexisting duty under the policy. Moreover, there are practical reasons for distinguishing between the duty to defend and the duty to indemnify when considering an insurer's argument that an insured failed to provide timely notice. An insurer's duty to defend is not only broader than its duty to indemnify, but is also an obligation to provide services (legal representation) to the insured, whereas an insurer's duty to indemnify is a financial obligation (indemnifying for a judgment or settlement). Given this difference, an insurer is more likely to suffer prejudice from late notice in its duty to indemnify than it is in its duty to defend. Finally, even considering the effect of any late notice on the duty to defend, the Court finds that Continental and One Beacon have failed to demonstrate that late notice prejudiced their ability to defend the case.[1] In this regard, the Court notes that Continental received notice of the Becker suit within six months after the suit was filed and One Beacon received notice shortly thereafter. Both insurers had an opportunity to participate in the Becker suit and, to the Court's knowledge, while One Beacon did not assume the defense, it participated by monitoring discovery and engaging in settlement negotiations. On the other hand, Continental elected to do nothing. Therefore, the late notice argument is rejected. *See Am. Mut. Liab. Ins. Co. v. Beatrice Cos.*, 924 F.Supp. 861, 874 (N.D.Ill.1996) (rejecting the insurers' claim of prejudice with regard to defense costs because the insurers had a meaningful opportunity to participate in the case after receiving notice).

### e. Whether Continental And One Beacon Are Liable For Pre–Tender Defense Costs

Continental argues that if it owes a duty to defend, it is responsible only for defense costs incurred after December 16, 1999—the date the Beckers tendered their defense to Continental.[2] As support for this argument, Continental relies upon *Fireman's Fund Insurance Companies v. Ex–Cell–O Corp.*, 790 F.Supp. 1318 (E.D.Mich.1992). In *Ex–Cell–O Corp.*, the court held that under Michigan law, when the insured is a sophisticated party, the insurer's duty to defend is triggered when the insured tenders the defense to the insurer, and the insurer is not liable for defense costs incurred by the insured prior to tender. The court noted that no Michigan court had addressed the situation where an insured gives notice of a lawsuit to the insurer and undertakes its own defense but later tenders the defense. However, the court found that, *Detroit Automobile Inter–Insurance Exchange v. Higginbotham*, 95 Mich.App. 213, 290 N.W.2d 414 (1980); *American Mutual Li-*

---

**1.** Whether the insurers were prejudiced by late notice with regard to their duty to indemnify is a question for another day.

**2.** Although One Beacon did not raise this argument in its brief, the Court will consider the argument also with respect to One Beacon since received notice several months after the Becker suit was filed.

*ability Insurance Co. v. Michigan Mutual Liability Co.,* 64 Mich.App. 315, 235 N.W.2d 769 (1975); and *Celina Mut. Insurance Co. v. Citizens Insurance Co.,* 133 Mich.App. 655, 349 N.W.2d 547 (1984), which endorsed the rule that "absent a request, an insurer has no duty to defend an insured," supported the conclusion that a tender of defense is required in order to trigger an insurer's duty to defend. *Ex–Cell–O,* 790 F.Supp. at 1327–29. The court noted that an insured may have its own reasons for delaying tender of the defense, such as maintaining control over the selection of counsel, the course of events, and settlement, and that an insured may waive part of its right to a defense without waiving its entire right to a defense.

Aero contends that *Ex–Cell–O* was wrongly decided and cites *Aetna, supra,* as support for its position. The *Aetna* court rejected the holding in *Ex–Cell–O* that an insurer has no duty to defend absent a tender of the defense because recent Michigan Supreme Court cases state that the duty to defend arises when the underlying claim is first brought against the insured. *See Aetna Cas. & Sur. Co.,* 44 F.Supp.2d at 858. However, the *Aetna* court did not conclude, as Aero suggests, that an insured is automatically entitled to recover pre-tender defense costs so long as the insurer has a duty to defend. Rather, the court stated that "[t]he insured's tender of the defense, formal or otherwise, and the insurer's unjustified refusal to defend are relevant factors in the inquiry whether the insurer has breached its duty to defend and what damages result from that breach." *Id.* at 859. The insured's legal theory in *Aetna* was that it was entitled to recover pre-tender defense costs because the insurers created a conflict of interest which entitled the insured to obtain its own independent counsel, and the duty to defend became a duty to reimburse. *Id.* at 860. Although the court acknowledged that a conflict of interest situation might

obligate an insurer to reimburse its insured for the costs of independent counsel, it denied the plaintiff's motion for summary judgment because it found that a genuine issue of material fact remained as to whether the insurers created a conflict of interest situation giving the insured the absolute right to control its defense in the underlying suits. *Id.*

Although the Court agrees with Aero that the duty to defend arises when the underlying suit is initiated against the insured, the Court rejects Aero's argument that an insurer is liable for pretender defense costs, at least where the insured fails to allege that the insurer created a conflict of interest situation as in *Aetna.* A contrary result would essentially turn an insurer's defense obligation into a duty to reimburse, without affording the insurer the opportunity to control the defense and settlement of the underlying obligation. This Court concludes that such a result would be inconsistent with Michigan law. Because Aero has not alleged that the insurers created a conflict of interest in this case, the Court concludes that Continental and One Beacon are only obligated to pay defense costs from the date the Beckers requested a defense.

## 2. Allocation of Defense Costs

 The parties dispute whether defense costs must be allocated among the insurers or whether the insurers are jointly and severally liable for all defense costs. Although One Beacon did not address the issue in its brief, Century and Continental contend that defense costs should be allocated according to the "time-on-the-risk" method, citing *Arco Industries Corp. v. American Motorists Insurance Co.,* 232 Mich.App. 146, 594 N.W.2d 61 (1998), and *Insurance Co. of North America v. Forty–Eight Insulations, Inc.,* 633 F.2d 1212 (6th Cir.), *modified,* 657 F.2d 814 (6th Cir.

1981). In *Arco Industries*, the Michigan Court of Appeals held that the "time-on-the-risk" method of apportionment was the proper method for apportioning liability based upon the language of the policy at issue. The court rejected the "all sums" method, which imposes joint and several liability on an insurer, since that method would obligate the insurer to indemnify its insured for damage occurring outside the policy period. *Id.* at 163, 594 N.W.2d at 69. Although *Arco Industries* did not involve apportionment of defense costs, that case cited the Sixth Circuit's decision in *Forty–Eight Insulations*, which held that defense costs were properly apportioned between the insurer and the insured for the period when the insured had no insurance. *See* 633 F.2d at 1224. The court reasoned that it would be improper to require the insurer to bear all defense costs when some of the defense costs were related to occurrences which took place outside the policy period. *Id.* at 1224–25. The court stated, "Where the distinction can be readily made, the insured must pay its fair share for the defense of the non-covered risk." *Id.* at 1225 (footnote omitted). Thus, according to *Forty–Eight Insulations*, it is fair to allocate defense costs where those costs can be readily apportioned. *Id.* at 1224. *See also Budd Co. v. Travelers Indem. Co.*, 820 F.2d 787, 790–91 (6th Cir.1987) (holding that apportionment between the insured and the insurer was required under the rationale in *Forty–Eight Insulations* because "the defense provided by the insurer conferred a benefit upon an aspect of the litigation outside the scope of the policy coverage").

The Court concludes that defense costs should be apportioned among the insurers because the rationale of *Forty–Eight Insulations* applies and the result is consistent with the *Arco Industries*, which rejected any method of allocation that would require the insurer to pay for any damage occurring outside the policy period. Here, defense costs can be readily apportioned among the insurers, so it reasonable to do so. The Court has considered the cases cited by Aero and finds them unpersuasive. To the extent that *Dow Corning Corp. v. Continental Casualty Co.*, No. 200143, 1999 WL 33435067 (Mich.App. Oct.12 1999) (per curiam), conflicts with *Arco Industries*, the Court declines to follow it because *Arco Industries* is consistent with the Sixth Circuit's approach with respect to defense costs. In addition, *Dow Corning* is distinguishable from this case because the policy in *Dow Corning* contained language stating that the insurer would pay damage arising out of an occurrence that is continuing at the time of termination of the policy. *Dow Corning*, 1999 WL 33435067, at *8. Aero has not shown that the policies at issue here contain similar language. *Ray Industries v. Liberty Mutual Insurance Co.*, 974 F.2d 754 (6th Cir.1992), is also distinguishable. There, no suit had been filed because the court held that a letter from the EPA identifying the insured as a potentially responsible party was not a "suit" under the policies in question. The Sixth Circuit held that the district court properly refused to allocate defense costs because at that point the insurer did not have a duty to defend and the parties were arguing about future defense services. The court concluded that apportionment was inappropriate because the future defense was "not easily apportioned." *Id.* at 770. In contrast, here Aero seeks to recover sums for defense costs that have already been incurred. According to *Forty–Eight Insulations*, those costs can be readily apportioned among the insurers.

### 3. Penalty Interest

■ Aero also argues that it is entitled to twelve percent penalty interest pursuant to M.C.L. § 500.2006. Because the Court has concluded that the insurers have

no obligation to defend Aero II, the question is limited to whether Aero is entitled to recover penalty interest on the Beckers' defense costs.

Section 500.2006 provides, in part:

(1) A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

. . . . .

(4) If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. If the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith and the bad faith was determined by a court of law. . . .

M.C.L. § 500.2006(1), (4).

Michigan courts have long held that an insurer will not be liable for penalty interest when the claim is reasonably in dispute. *See Siller v. Employers Ins. of Wausau,* 123 Mich.App. 140, 143–44, 333

N.W.2d 197, 199 (1983). Aero does not argue that the Beckers' claims for coverage under the policies were not subject to reasonable dispute. Such an argument could not be sustained in light of the lost policy issues presented to the Court in the prior motions for summary judgment. Aero argues, however, that is entitled to recover penalty interest even if its claims were reasonably in dispute. Aero cites *Yaldo v. North Pointe Insurance Co.,* 457 Mich. 341, 578 N.W.2d 274 (1998), in which the Michigan Supreme Court, in a footnote referring to M.C.L. § 500.2006, stated, "[w]here the action is based solely on contract, the insurance company can be penalized with twelve percent interest, even if the claim is reasonably in dispute." *Id.* at 348 n. 4, 578 N.W.2d at 277 n. 4. Aero also cites *ACME Roll Forming Co. v. Home Insurance Co.,* No. 00–1795, 31 Fed.Appx. 866, 2002 WL 446960 (6th Cir. Mar.20, 2002), an unreported decision in which the Sixth Circuit conceded that the statement in *Yaldo* was dicta, but found the Michigan Supreme Court's statutory interpretation to be "sound." *Id.* at 870.

The vast majority of courts have continued to adhere to the rule that an insurer is not liable for penalty interest where the claim is reasonably in dispute. In *Arco Industries, supra,* the Michigan Court of Appeals applied *Yaldo* in determining that the insured was entitled to collect penalty interest. 232 Mich.App. at 171–72, 594 N.W.2d at 73. Upon rehearing, the court concluded that it erred in relying on *Yaldo* because the issue in *Yaldo* was whether the insured was entitled to interest under M.C.L. § 600.6013(5) or M.C.L. § 600.6013(6). *Arco Industries Corp. v. American Motorists Insurance Co.,* 233 Mich.App. 143, 146–47, 594 N.W.2d 74, 75 (1998). Thus, the court found that the *Yaldo* court's interpretation of M.C.L. § 500.2006 was dictum and did not establish a rule of law with regard to the inter-

pretation of that section. *Id.* at 147, 594 N.W.2d at 75. In addition, the court noted that the rule set forth in *Siller* has been followed since 1983 by both state and federal courts and "[t]he purpose of the penalty interest statute is to penalize insurers for dilatory practices in settling meritorious claims, not to compensate a plaintiff for delay in recovering benefits to which the plaintiff is ultimately determined to be entitled." *Id.* at 148, 594 N.W.2d at 76. *See also Kerwin v. Paul Revere Life Ins. Co.,* No. 99–2313, 2001 WL 223856, at *6 (6th Cir. Mar.1, 2001) (declining to rely on *Yaldo* and stating that "the Michigan Supreme Court, if called upon to resolve this question, would approve of the trend among Michigan's lower courts prohibiting the assessment of statutory interest where a claim is reasonably in dispute"); *Burnett v. Citizens Ins. Co. of Am.,* No. 210737, 2000 WL 33534534, at *2 (Mich.Ct.App. Feb.18, 2000) (per curiam) (citing *Arco* and affirming denial of penalty interest because the claim was reasonably in dispute); *Hakanson v. Mich. Basic Prop. Ins. Ass'n,* No. 2000774, 1999 WL 33441093, at *2 (Mich. Ct.App. June 22, 1999) (per curiam) (same); *Sloan v. Finsilver Assocs., Inc.,* 208 F.Supp.2d 744, 748 (E.D.Mich.2002) (citing *Arco* for the proposition that "[t]he penalty interest statute does not apply in situations where the insurer's obligation is reasonably in dispute"). The Court agrees that *Yaldo* was dicta, and for the reasons cited in *Arco Industries* on rehearing, the Court agrees with the long-established interpretation that penalty interest must be denied where the claim was reasonably in dispute. Therefore, Aero's request for penalty interest will be denied.

**B. Defendants' Motion To Dismiss**

Aero also moves for dismissal of Count V of Century's amended complaint, which is a claim for recovery of excess defense costs in the Becker suit. Century alleges that it is entitled to recover excess defense costs from the Beckers because it has paid 40% of those costs but its allocable share is only 18%. This motion is based upon Aero's argument that defense costs cannot be allocated to the Beckers because the insurers are jointly and severally liable for defense costs. As set forth above, the Court declines to follow *Ray Industries* and *Dow Corning*—the principal authorities cited by Aero—and holds that defense costs should be apportioned among the insurers. This means that if Century has paid more than its share of defense cost, it will be entitled to recover the excess from the Beckers. Accordingly, the motion to dismiss will be denied.

**C. Insurers' Rule 56(f) Motions**

The insurers have filed motions to defer summary judgment pursuant to Rule 56(f). That rule provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). In light of the rulings set forth above, the Court concludes that further discovery on the issue of the insurers' duty to defend would be neither helpful nor necessary. Therefore, the motions will be denied.

**IV. *Conclusion***

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion for summary judgment regarding the insurers' duty to defend. The Court concludes that the insurers have no duty to defend Aero II but that they do have a duty to defend the Beckers. The

Beckers are entitled to recover defense costs incurred after the date of tender of the defense to Continental and One Beacon. Defense costs will be allocated among the insurers on a time-on-the-risk basis. The Court will also deny Aero's motion to dismiss Century's claim for recovery of excess defense costs. Finally, the Court will deny Plaintiffs' Rule 56(f) motions.

An Order consistent with this Opinion will be entered.

### ORDER

In accordance with the Opinion filed this date,

IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment On Duty To Defend And To Dismiss Count V. Of Plaintiff Century Indemnity's Amended Complaint (docket no. 177) is GRANTED IN PART AND DENIED IN PART. The motion is granted with respect to the Insurers' duty to defend the Beckers. The Beckers are entitled to recover defense costs from the Insurers. Defense costs shall be allocated among the Insurers on a time-on-the-risk basis. Plaintiffs Continental Insurance and One Beacon Insurance Company are liable for defense costs from and after the date the Beckers tendered the defense. The motion is denied with respect to Aero II's right to recover defense costs: Aero II is not an insured under the policies at issue and the Insurers do not owe Aero II a duty to defend. The motion is also denied with respect to Defendants' claim for penalty interest. Finally, the motion to dismiss Count V of Plaintiff Century Indemnity Company's amended complaint is denied.

IT IS FURTHER ORDERED that Plaintiff Century Indemnity Company's Motion To Defer Summary Judgment Pursuant To Rule 56(f) (docket no. 222), Plaintiff Continental Insurance Company's Motion For A Continuance Regarding Defendants' Motion For Partial Summary Judgment (docket no. 233), and Plaintiff One Beacon's Motion To Defer Summary Judgment Pursuant To Rule 56(f) (docket no. 229) are DENIED.