**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0504n.06

**No. 12-2511**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| AMI ENTERTAINMENT NETWORK, INC., | ) ) ) ) ) | **FILED**<br>*May 20, 2013*<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| v. | ) ) | |
| ZURICH AMERICAN INSURANCE CO., | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |

Before:  MARTIN and SUTTON, Circuit Judges; ADAMS, District Judge.[*]

SUTTON, Circuit Judge.  In this insurance case, a diversity suit governed by Michigan law, AMI Entertainment Network challenges the district court's grant of summary judgment to its insurer, Zurich American Insurance.  We affirm.

I.

In July 2010, AMI was sued by a company called RDI in Oakland Circuit Court.  The lawsuit alleged that AMI falsely claimed that RDI did not own a valid license to distribute the Michigan Superstar video poker game.  Between July 2010 and November 2011, AMI defended itself from the lawsuit, filing several motions and eventually removing the lawsuit to federal court.  In the process, AMI ran up more than $1.3 million in legal fees.  For reasons of its own, AMI did not notify its insurer, Zurich, about the lawsuit until November 2011.

_____

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

When Zurich received word of the lawsuit, it informed AMI that, going forward, it would provide a defense under the terms of AMI's policy. At the same time, it refused to pay the legal bills AMI had already incurred in view of the prompt-notice and expense-permission requirements of the insurance policy.

AMI filed this lawsuit in response, alleging that Zurich had breached its duty of defense by refusing to pay for the legal bills AMI incurred before November 2011. The district court granted summary judgment to Zurich.

## II.

This appeal presents one question: Must Zurich pay the defense costs AMI incurred before it told Zurich about the underlying litigation? The answer is no, as the district court correctly recognized.

Start with the language of the insurance contract. The policy obligated AMI to notify Zurich "promptly of any . . . suit," and gave Zurich "the right to appoint defense counsel." R. 14-2 at 15, § I.D.3; *see also id*. at 55 (requiring AMI to notify Zurich "as soon as practicable" in the event of a lawsuit against AMI). The policy added that "[n]o insured will, except at that insured's own costs, voluntarily make any payment, assume any obligation, or incur any expense . . . without our consent." R. 14-3 at 11, § IV.2.d. The policy confirmed that "[c]ompliance with the reporting requirements . . . is a condition precedent to coverage." R. 14-2 at 15, § I.D.4. And the policy established that, if AMI failed to comply, Zurich would "not be required to establish prejudice resulting from the noncompliance, but [would] be automatically relieved of liability with respect to

the claim." *Id*. When all is said and done, the language of the policy squarely supports Zurich's decision not to pay for defense expenses incurred before AMI told Zurich about the underlying lawsuit and incurred without Zurich's permission.

In addition to being supported by the language of the policy, Zurich's position also is supported by background principles of Michigan insurance law. The policy gave Zurich the duty to defend AMI against any lawsuit that potentially fell within the ambit of the policy. That duty began as soon as a lawsuit was filed against AMI. *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996). An insurer cannot, however, breach that duty before it knows about a lawsuit. *Aetna Cas. & Sur. Co. v. Dow Chemical Co.*, 44 F. Supp. 2d 847, 859 (E.D. Mich. 1997); *Century Indem. Co. v. Aero-Motive Co.*, 318 F. Supp. 2d 530, 544 (W.D. Mich. 2003), *aff'd*, 155 F. App'x 833 (6th Cir. 2005) (citing *Dow Chem. Co.* for the same). Before an insurer knows about a lawsuit, it has no chance to mount (or to refuse to mount) a defense for its insured, and insurers are not sentries who must march "back and forth to the court house to keep a check on if or when [their insured] may be served with process." *Koski v. Allstate Ins. Co.*, 572 N.W.2d 636, 640 (Mich. 1998) (quoting *Weaver v. Hartford Acc. & Indem. Co.*, 570 S.W.2d 367, 369 (Tex. 1978)). AMI does not dispute that Zurich did not know about the RDI lawsuit until November 2011. Before then, Zurich could not have breached any duty to defend, and in the absence of a breach Zurich cannot be liable for AMI's defense costs.

AMI offers several responses, all unconvincing. It first claims that Zurich must establish prejudice from the absence of notice and permission, notwithstanding the term of the parties'

agreement that disclaimed any need to show prejudice. Call us skeptical. Some Michigan cases to be sure suggest that Michigan public policy prohibits a party from refusing to indemnify based on a failure to notify the insurance company in a timely manner in the absence of prejudice to the insurance company. *See, e.g.*, *Koski*, 572 N.W.2d at 639; *Wendel v. Swanberg*, 185 N.W.2d 348, 353 (Mich. 1971). But AMI has not pointed us to an expense-only case in which this public policy prohibits the insurance company from enforcing a contractual provision that reasonably requires notice and permission before the insured may charge defense costs to the insurance company.

Be that as it may, we need not resolve this point of Michigan law today. The reality is that Zurich can show prejudice in any event. For sixteen months, all concede, Zurich did not know about the lawsuit. And for sixteen months, AMI assumed control of the defense of the RDI lawsuit without Zurich's knowledge, depriving Zurich of the opportunity to manage the litigation efficiently or for that matter settle it. *See Koski*, 572 N.W.2d at 639 (holding that an insurer suffered prejudice when, among other things, it was "deprived of any opportunity to engage in discovery"); *Wehner v. Foster*, 49 N.W.2d 87, 91 (Mich. 1951) (finding prejudice when a seven-month delay in reporting a claim gave the insurer no opportunity to inspect damaged property or interview witnesses); *see also Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008) (finding that "increasing the cost of defending the suit" prejudiced an insurer); *Integon Nat'l Ins. Co. v. Berry*, No. 289320, 2010 WL 1138023, at *4 (Mich. Ct. App. Mar. 25, 2010) (explaining that an insurer suffered prejudice when it was "deprived of notice and the opportunity to defend"). On top of these general indicators of prejudice, there is another purpose of an expense-permission clause: approving the rates of outside

counsel. In this instance, AMI paid the partners of its outside law firm $250 per hour, while Zurich permitted partners at outside law firms a maximum of $150 per hour. *See* Morrow Aff., R. 16-7 ¶ 12. Similar disparities existed between the rates paid by AMI for the work of associates and the rates allowed by Zurich. *Id.* Allowing AMI to recover pre-notice and pre-permission costs would transform the insurer's duty to defend into "a duty to reimburse, without affording the insurer the opportunity to control the defense and settlement of the underlying obligation." *Century Indem. Co.*, 318 F. Supp. 2d at 544.

Nor did a potential conflict of interest between AMI and Zurich—arising from the intentional-tort exemption in the policy—give AMI the right to control the defense without notice to Zurich and without permission from Zurich for the expenses AMI incurred. Many liability insurance policies, including this one, exempt intentional torts from their coverage. And in this instance, RDI brought a series of claims against AMI, one of which might or might not be treated as an intentional tort. In that kind of a setting, if the insurer "has asserted coverage defenses that raise the same issues raised by the plaintiff in the underlying action against the insured," the insured need not cede the lawsuit's defense to its insurer, and the insurer remains liable for the costs. *Dow Chemical Co.*, 44 F. Supp. 2d at 860.

But to invoke this kind of a conflict to retain control of the defense, AMI had to do something it did not: give notice to the insurer. An insurer cannot argue that a lawsuit falls outside the policy's scope if the insurer does not know of the lawsuit at all. That is why *Dow Chemical* refused to grant summary judgment when there was a factual question about "when, if at all," the insurer was "made

aware of an underlying claim and [the insured's] need for a defense." *Id*. at 861. No such dispute clouds the resolution of this case. AMI does not contend that Zurich knew about the lawsuit before AMI provided notice in November 2011. Perhaps, as AMI claims, a conflict began after Zurich raised several potential defenses in December 2011. That question is the subject of a separate lawsuit over post-notice defense costs still pending in the district court. *See* Complaint ¶¶ 17–20, *AMI Entm't Network, Inc.* v. *Zurich Am. Ins. Co.*, No. 4:12-cv-15212-GAD-LJM, ECF #1 (E.D. Mich. Nov. 27, 2012). But even if such a conflict existed, it had no bearing on Zurich's liability for money AMI spent *before* it notified Zurich. As the district court correctly concluded, AMI alone bears responsibility for those costs.

III.

For these reasons, we affirm.